STATE OF NEBRASKA EX REL. CITY OF GRAND ISLAND, A MUNICIPAL CORPORATION IN HALL COUNTY, NEBRASKA, APPELLEE, V. CHARLES TILLMAN, COUNTY ASSESSOR, IN AND FOR HALL COUNTY, NEBRASKA, APPELLEE, LUMAN H. ALBERTI ET AL., INTERVENERS-APPELLANTS.

115 N. W. 2d 796

Filed June 15, 1962.   No. 35203.

Harry Grimminger, John A. Wagoner, and Baylor, Evnen, Baylor & Urbom, for appellants.

Paul C. Holmberg and E. G. Kroger, for appellee City of Grand Island.

Heard before SIMMONS, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and CHADDERDON, District Judge.

CHADDERDON, District Judge.

This is a mandamus action brought by the City of Grand Island, which will be referred to herein as city, against Charles Tillman, County Assessor in and for Hall County, Nebraska, who will be called Tillman in this opinion. After the trial court had allowed a peremptory writ of mandamus and had overruled Tillman's motion for a new trial, Luman H. Alberti and Phyllis M. Alberti, herein called Albertis, filed an application to intervene for the purposes of appeal. The trial court denied the Albertis the right to intervene. The Albertis filed a motion for new trial which was overruled, and the matter was appealed to this court.

The city, in its amended motion and affidavit for writ of mandamus, alleges among other things that it is a city of the first class with a population of more than 25,000 and less than 40,000, and has been operating under a home rule charter since June 3, 1928; that on

August 29, 1961, at a special meeting of the city council, the city passed an ordinance annexing certain territory set out in the ordinance, a description of which is unnecessary; that on August 30, 1961, said ordinance was published in Grand Island; that on August 31, 1961, the city filed a certified copy of the ordinance together with a plat of the property described therein in the office of the register of deeds of Hall County, Nebraska; that on September 20, 1961, the city council unanimously passed a resolution directing the city attorney to make a demand on Tillman to place the property on the tax assessment records of the city; that on September 21, 1961, such a demand was made on Tillman, and that he refused to place the property on the tax assessment records of the city; and that it did not have an adequate remedy at law. It prayed that the court issue an alternative writ of mandamus directing Tillman to place the property on the assessment records of the city. Tillman filed a return and answer, and the action was tried to the court. The court entered a writ of peremptory mandamus. Tillman filed a motion for new trial which was overruled by the court. Thereafter an application was filed by Albertis to intervene for the purpose of appeal, which application was denied. The Albertis filed a motion for new trial, which was overruled, and the action was appealed to this court. The evidence was such that the trial court could have found that the ordinance was passed in accordance with law, and that finding is not questioned. The other evidence necessary for decision herein will be set forth as occasion arises.

The first matter to be decided is, should the Albertis have been allowed to intervene 2 days after the court had overruled the motion for new trial filed by Tillman? This proposition consists of three questions: (1) Under our law could they intervene after the trial of the case? (2) Did the petition show a right to intervene? (3) Were they guilty of laches in failing to intervene before trial?

In Kitchen Bros. Hotel Co. v. Omaha Safe Deposit Co., 126 Neb. 744, 254 N. W. 507, the court said: "We meet the contention, made for the first time in this court, that parties cannot come into a case by intervention after judgment. Section 20-328, Comp. St. 1929, provides: 'Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the state of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.' We have passed directly upon this matter in several cases. 'In the first place the contention of the appellee that a statutory petition in intervention must be filed before trial must be conceded. But there are two kinds of intervention—that provided by section 7609, Rev. St. 1913 (now section 20-328, Comp. St. 1929) which, we have decided in common with the courts of other states having like provisions, is a matter of right, and which requires no leave to be granted by the court. In such a case the intervener can only file as a matter of right before the trial. * * * The other kind of intervention is that which prevailed in this state before the enactment of the statute mentioned, and which, while not an ancient procedure in courts of equity (note at page 281, 123 Am. St. Rep.), has been adopted by many courts as essentially equitable in its nature, and which may be allowed by a court of equity in its discretion in a proper case.' State v. Farmers State Bank, 103 Neb. 194.

" 'It is first argued that a petition to intervene must be filed before trial, that the right of intervention terminates with the final decree, and that the trial court

erred in overruling the motion to strike intervener's pleadings from the record. In this connection reference is made to the statutory right of intervention before trial. Comp. St. 1922, sec. 8552 (now Comp. St. 1929, sec. 20-328). Intervention under this statute is a matter of right, but does not prevent a court of equity in the interests of justice from allowing a proper party to intervene after the trial has begun. State v. Farmers State Bank, 103 Neb. 194. Was intervention properly allowed 17 days after entry of the unexecuted decree of foreclosure? Leave to intervene after the entry of a final decree is not allowable as a matter of right and should seldom be granted, but equity sometimes requires a departure from the general rule. In the light of both reason and precedent it has been said: "Applications for leave to intervene after entry of a final decree are unusual, and generally have been denied. There are instances, however, where petitions for leave to intervene have been filed and granted after decree." 21 C. J. 345.' Engdahl v. Laverty, 110 Neb. 672. See, also, 21 C. J. 341-343, 345, and notes; Brown v. Brown, 71 Neb. 200; Ward v. Clark, 6 Wis. 509; Webb v. Patterson, 114 Neb. 346."

This court in Kirchner v. Gast, 169 Neb. 404, 100 N. W. 2d 65, said: "We have held: 'The interest in a matter in litigation which will authorize a person to so intervene must be such a direct and immediate interest that the person or persons seeking to intervene will either lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. * * * Such an interest must be one arising from a claim to the subject matter of the action or some part thereof or a lien upon the money or property or some part thereof, as distinguished from an indirect, remote, or conjectural interest in the result of the suit which is not enough to permit intervention.' Gilbert v. First Nat. Bank, 154 Neb. 404, 48 N. W. 2d 401."

Again in Noble v. City of Lincoln, 158 Neb. 457, 63

N. W. 2d 475, the court said: "Appellants challenged the petition in intervention by general demurrer. It was overruled. The interveners alleged that they were taxpayers and electors of the city of Lincoln and that they had an interest in the matter in litigation in this suit. There is statutory authority for any one who has or claims an interest in the matter in litigation to become a party to the action. § 25-328, R. R. S. 1943. The interest required is a direct and immediate legal interest of such a character that the person seeking to intervene will either lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. The ultimate facts must be alleged by him evidencing his interest in the matter in litigation and an averment that he has an interest in the subject matter is a conclusion and is not sufficient to permit intervention. Schroder v. City of Lincoln, 155 Neb. 599, 52 N. W. 2d 808; Drainage District v. Kirkpatrick-Pettis Co., 140 Neb. 530, 300 N. W. 583; Cornhusker Electric Co. v. City of Fairbury, 131 Neb. 888, 270 N. W. 482. Contrary to any claim that there was fraud, inefficiency, or lack of diligence on the part of appellees in their efforts herein to assert and protect the rights of the city, its officers, and inhabitants, the petition of the interveners asserts that the city of Lincoln is defending the suit 'on the basis of its good faith.' This negatives any inference of fraud, collusion, or inattention or that their interest in the litigation as taxpayers was not being properly represented. Taxpayers are not qualified to intervene in matters of public interest that are prosecuted or defended for a governmental subdivision by its proper officials. Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150; City of Omaha v. Douglas County, 125 Neb. 640, 251 N. W. 262; State ex rel. Randall v. Hall, 125 Neb. 236, 249 N. W. 756."

With these rules of law in mind let us examine the facts in this case so far as they relate to the matter of intervention. The Albertis allege in their application,

which allegations are sustained by the evidence, in. substance that they are representing themselves and all other persons similarly situated; that they own real estate situated in the area involved in this suit; that the question of whether or not the city had met the requirements of the statutes for annexation was determined by the trial court; that Tillman had undertaken to defend this action; that his attorney had publicly stated on various occasions that he would carry the case to the Supreme Court and they had relied upon these statements; that upon learning that an appeal might not be taken they requested Tillman to take the necessary steps to appeal the case to the Supreme Court; that they would guarantee the payment of costs for such an appeal; and that their interest in this matter was a determination of whether or not the annexation of the territory involved herein, part of which was their land, became a part of the city of Grand Island.

The Albertis were in the position of having their interests protected by Tillman, whose attorney had publicly announced that regardless of the result in district court the case would be appealed to the Supreme Court. Just before the court announced its ruling on the motion for new trial Tillman announced that if the ruling was adverse he would not appeal. Two days later they filed an application to intervene, which we think was a reasonable time.

A court of equity should, upon proper application, be sure that the rights of all parties before it are protected and that they be given the right to appeal from an adverse judgment.

We determine that the Albertis could intervene after the motion for a new trial was overruled; that the application was sufficient to show that they had such an interest in the suit to allow them to intervene and that they did so as soon as possible after they learned that Tillman would not appeal the case; and that the trial

court should have allowed their application to intervene for the purpose of appeal.

We now come to the assignments of error on the merits of the case. These may be described as involving four questions: (1) Did the annexation ordinance passed by the city meet the requirements of the State of Nebraska and its home rule charter? (2) Was it necessary for the City of Grand Island to comply with the provisions of sections 16-107, 16-108, and 16-109, R. R. S. 1943? (3) Are these sections of the statute unconstitutional? (4) Was the question of constitutionality of these statutes raised in the trial court?

With regard to the first question the city in its amended motion and affidavit for writ of mandamus sets out its home rule charter with regard to the extension of the city limits and annexation of territory as follows: "The corporate limits of the City shall remain as heretofore and the Mayor and Council may by ordinance include therein all the territory contiguous or adjacent, which has been by the act, authority or acquiescence of the owners subdivided into parcels containing not more than five acres, and the Mayor and Council shall have the power by ordinance to compel the owners of land so brought within the corporate limits, to lay out streets, ways and alleys to conform and be continuous with the streets, ways and alleys of such city, and vacate any public road heretofore established through such land when necessary to secure regularity in the general system of its public ways." It further alleges that the home rule charter also provides: "Saving to itself all other rights and powers that are now or may hereafter be given the city on general law."

The ordinance involved herein does not comply with the provisions of its home rule charter as it now exists because the stipulation in this case provides in paragraph VI thereof: "It is further stipulated that all of the area included in the ordinance involved in this case had been subdivided or platted into tracts of

twelve acres or less, but one or more of said tracts or parcels of land are subdivided into parcels which contain in excess of five acres, all of said subdivisions having been made prior to the passage of the ordinance of annexation, with the exception of one tract of twenty acres owned by the Grand Island School District, and that tract was included at the request of said School District." We see that several tracts contain in excess of 5 acres and one tract is 20 acres. Thus we are only concerned with the statutes of Nebraska which provided for the annexation of property to the city.

There are two methods of annexing territory to a city of the first class, both of which are provided for in sections 16-106, 16-107, 16-108, 16-109, and 16-112, R. R. S. 1943, as amended. Section 16-112, R. R. S. 1943, provides that the owner of any land contiguous to the corporate limits shall plat the same as described therein, obtain the approval of the mayor and council, and file the same in the office of the register of deeds, and then such tract shall be included within the city for all purposes. This method was not used in this instance, but rather the method provided in sections 16-106, 16-107, 16-108, and 16-109, R. R. S. 1943, as amended. Section 16-106, R. S. Supp., 1961, provides as follows: "The corporate limits of such city shall remain as before and the mayor and council may by ordinance include therein all the territory contiguous or adjacent, which has been by the act, authority, or acquiescence of the owners subdivided into parcels containing not more than twelve acres and any tract consisting of twelve or more acres which is entirely surrounded by land already embraced within the corporate limits of said city, except as provided by section 19-2504. The mayor and council shall have power by ordinance to compel the owners of lands so brought within the corporate limits to lay out streets, ways, and alleys to conform to and be continuous with the streets, ways, and alleys of such city, and may vacate any public road heretofore established through such

land when necessary to secure regularity in the general system of its public ways." With this in mind let us examine the cases decided by this court in regard to the annexation of territory by cities of the first class. In Chicago, B. & Q. R.R. Co. v. City of Nebraska City, 53 Neb. 453, 73 N. W. 952, the court said: "The adoption of said ordinance was wholly insufficient to change the boundaries of the municipality. The statute at that time in force designated the mode for the annexation of adjacent territory to a city of the first class having less than 25,000 inhabitants. (Compiled Statutes 1891, ch. 13a, art. 2, secs. 4, 6.) The one for which provision is made in said section 4 permits such annexation to be accomplished by the passage of an ordinance by the mayor and council extending the corporate limits so as to include territory contiguous or adjacent to the city, which by the authority or acquiescence of the owner has been subdivided into tracts or parcels containing not to exceed five acres. The record fails to establish that the real estate sought to be annexed by the ordinance in question had been subdivided by the owner into parcels of the size specified by said section 4. It is true the amount of land attempted to be added to the city does not exceed five acres, but that is an unimportant consideration, and does not meet the legislative requirement that the contiguous territory must have been subdivided by the proprietor into parcels of not to exceed five acres, in order to entitle the same to be attached to the corporation by the mere passage of an ordinance ordering it to be annexed. It is a familiar doctrine that municipal corporations can exercise only such powers as are conferred by law, either expressed or implied. Where the statute points out the mode of procedure for the extension of the boundaries of a city, the same must be substantially followed, else it will be of no validity."

In that case the court held that the annexation ordinance was not valid because the territory sought to be annexed was not divided into lots as provided in the

statutes in effect at that time, and held that the interpretation of annexation statutes should be strictly construed.

In Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490, the court set out the rules with regard to the interpretation of annexation statutes both under the home rule charter and the statutes. In that case the court said: "Annexation of territory under this authority is a legislative matter. However, courts have the power to inquire into and determine whether the conditions exist which authorize the lands to be annexed. Campbell v. Youngson, 80 Neb. 322, 114 N. W. 415; Winkler v. City of Hastings, 85 Neb. 212, 122 N. W. 858; Witham v. City of Lincoln, 125 Neb. 366, 250 N. W. 247.

" 'Constitutional and statutory limitations on the nature and extent of the territory which may be annexed to a municipal corporation must be observed.' 62 C. J. S., Municipal Corporations, § 46, p. 130.

"In doing so it is not for the courts to determine what portions might be properly annexed, for the fixing of boundary lines under this authority is a legislative act. State ex rel. Davis v. City of Largo, 110 Fla. 21, 149 So. 420; City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S. W. 2d 928.

"The home rule charter adopted by the city of Omaha is a grant as distinguished from a limitation of power. Being a grant of power the charter is to be construed according to the same rules as a legislative act containing the same provisions in determining what authority is thereby granted the city government. Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643; Falldorf v. City of Grand Island, 138 Neb. 212, 292 N. W. 598.

" 'A municipal corporation is a creature of the law established for special purposes, and its corporate acts must be authorized by its charter and other acts applicable thereto. It therefore possesses no power or faculties not conferred upon it, either expressly or by fair

implication, by the laws which created it or by other laws, constitutional or statutory, applicable to it.

" "The power conferred upon municipal corporations by their charters to enact ordinances on specified subjects is to be construed strictly, and the exercise of the power must be confined within the general principles of the law applicable to such subjects.' Reid v. City of Omaha, *supra*. See, also Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649.

" 'A municipal corporation or its corporate authorities have no power to extend its boundaries otherwise than provided for by legislative enactment or constitutional provision. Such power may be validly delegated to municipal corporations by the legislature, and when so conferred must be exercised in strict accord with the statute conferring it.' 37 Am. Jur., Municipal Corporations, § 24, p. 640."

In that case the annexation ordinance included what the court found to be agricultural lands and as a result it declared the whole ordinance void, saying: "In view of the foregoing we have come to the conclusion that the city, by including these agricultural lands which are rural in character in the area sought to be annexed, exceeded the authority granted it by section 14-117, R. S. 1943. Since we have no authority to revise the boundary line of the city, as extended by the ordinance, we find that its doing so makes the entire ordinance invalid."

With these rules in mind let us examine the evidence in this case. The stipulation entered into by the parties as set forth above states that one tract owned by the Grand Island school district was included at the request of said district. Since that tract was more than the legal maximum which the statute allowed, and since the Grand Island school district did not comply with the provisions of section 16-112, R. R. S. 1943, the city did not have the authority to extend its boundaries over that real estate, and we find that the entire ordinance

was invalid. In view of these findings, it is unnecessary to decide whether or not the city was required to comply with the provisions of sections 16-107, 16-108, and 16-109, R. R. S. 1943. The same is true with regard to the constitutionality of these statutes and also as to whether or not the constitutionality of these statutes was properly raised in the court below. These questions therefore are not passed upon.

The judgment of the trial court is reversed and the cause remanded with directions to enter a judgment of dismissal, with costs both in this court and in the district court to be paid by the City of Grand Island.

REVERSED AND REMANDED WITH DIRECTIONS.